# CHARLESTON.

THRASHER *v.* BALLARD *et al.*

Submitted June 20, 1891.—Decided November 14, 1891.

1. APPOINTMENT—POWER OF APPOINTMENT—WILL.
   An act done in execution of a power of appointment must conform thereto. A will made in execution of a power to appoint by will which appoints the whole subject to one person entitled under the power omitting others equally entitled is void as an act of appointment.

2. APPOINTMENT—WILL.
   Instance of a will held void for departure from the power.

3. APPOINTMENT.
   Illusory appointments referred to.

*A. F. Mathews* for appellant, cited 1 Gratt. 1; 18 Gratt. 541; 11 Gratt. 454; 6 Munf. 356; 13 W. Va. 510; 2 Min. Inst. 823; 73 Am. Dec. 1886; 47 Am. Dec. 601.

*J. Osborne* for appellee, cited 11 Gratt. 466; 2 Gratt. 1; Lom. Dig. 232-234, 517; 2 Min. Inst. 821, 823.

BRANNON, JUDGE:

This is an action of ejectment in the Circuit Court of Monroe by Lucy J. Thrasher against Lewis Ballard and others, resulting in a judgment in favor of the plaintiff for

an undivided half of the tract of land in controversy; and she claiming the whole tract comes to this Court to reverse the judgment because it allowed her only half of the tract.

The only question before this Court is whether Mrs. Thrasher should have had judgment for the half or whole of the land, and that depends on the construction of a deed made 12th March, 1845, by Daniel Stoner to Wm. Nossinger conveying personal and real estate "in trust for the said Matilda Stoner and he the said William Nossinger will and shall permit the said Matilda Stoner during her life to receive and take all the issues, rents, hires, profits and interest of the said property, debts, bonds, moneys, slaves, lands, stock and apply and do with as she may think proper, and the said William Nossinger will permit the said Matilda and the right is hereby given her to dispose of the aforesaid property by will and give such portion thereof as she may think proper to the said Daniel Stoner or the children which they now have, or any which they may hereafter have, in case the said Matilda Stoner should survive her husband and all of her children, she can dispose of the whole of the estate as she may think proper. It is further understood, that if any of the children of the said Daniel and Matilda, or any which they may hereafter have, shall marry or arrive of age, that the said William Nossinger shall give to such child, or children such part of the property aforesaid as the said Matilda shall direct."

The land conveyed by this deed, lying in Roanoke county, Virginia, was sold and its proceeds reinvested in the tract of land in Monroe involved in this action, which was conveyed to a trustee, Daniel Stoner, to be held upon the same trusts and rights declared in the said deed from Daniel Stoner to Nossinger.

Daniel Stoner was husband of Matilda Stoner, and they had two children, Lucy J. Thrasher and Letitia S. Burford. Both Daniel Stoner, and Matilda, his wife, are dead. Matilda Stoner left a will by which she devised the tract of land to Lucy J. Thrasher exclusively. Could she do this?

I shall eliminate Daniel Stoner from consideration, he being dead when Matilda died. By the deed from Daniel

Stoner to Nossinger, a power of appointment is conferred upon Matilda Stoner to be executed by her will, and the question is, whether such power of appointment allowed her to exercise the power of appointment by devising it to one of the sisters in exclusion of the other. Did Daniel Stoner intend to empower Mrs. Stoner to do this? Did he intend, by the language quoted above from the deed to Nossinger, to give her absolute discretion to give all the land to one child or both as she might see fit? We must glean his intent from that instrument, as every instrument best reflects it own purpose, and adjudged cases afford no very decided light; but stillthey afford some guidance to our steps. Sugden on Powers, 538, says that under a power to appoint "to all and every child and children," or "to and among several objects," every one must have share. So even a power of disposal "unto and amongst *such* children begotten between us and in such proportion" as the wife shall appoint, compels a distribution among all. And Lord Alvanley held that a power to appoint "amongst the children as the donee shall think proper," did not authorize an exclusive appointment. He thought the word "amongst" equivalent to "all and every."

On the other hand, exclusive appointments have been sustained where the words of the power were, " to one or more of my children, as my wife shall think fit"—"to be at my wife's disposal, provided it be any of my children"— "amongst all or such of my children"—"to and amongst such of my relations, in such parts, shares and proportions" —"for the use of such of the children or child, in such shares *etc.*, and in such manner as A and B, or the survivor, should appoint "—" unto and amongst all such child or children of A, in such parts, shares or proportions as B shall choose." See 2 Lomax Dig. 171. In *Knight* v. *Yarbough*, Gilmer 27, there was a devise to a wife " to dispose of among my children as she pleases," and the Court of Appeals of Virginia held it not a power to make an exclusive appointment, and that each child must have a reasonable share, and a will ignoring some of the children was held void. In *Hudson* v. *Hudson*, 6 Munf. 352, where a will empowered the wife to dispose of slaves " among his child-

ren" (in general terms) "as she shall think proper," it was held that she could not give all to one, and a will made by her giving practically all the property to one was a void execution of the power confided to her.

In the case in hand the language of the deed creating the power of appointment is, " to give such portion thereof as she may think proper to the said Daniel Stoner, or the children which they now have, or any which they may have." The presence of the word "portion" has force and significance upon the intent. A portion is not the whole. He meant that his wife was to give such portions or shares to the children as her judgment, looking at their condition and situation in life, might approve. Suppose he had used the plural, "portions," would it not import that each child should have a portion—that the property should be cut into such parts as the mother's wisdom would suggest for each child? I think the word " portion " is to be taken as if " portions," and that it indicates that Stoner had in his mind more than one person to share in the property. The word " portion " could not mean that she might give only a portion of the estate to the appointees, and otherwise dispose of the balance to strangers, for she had only a life estate, and the deed specifies no other disposition of the property, and we must not presume that the donor did not intend to dispose of the whole property. Therefore, we must hold this word " portion " as meaning portions or parts to be given different persons.

Take next the words " the children " — give to the children. Had he said dispose of " to and among the children," under the language of cases referred to by Sugden and Lomax it would repel an exclusive appointment. Had he said dispose of " among the children," it would have fallen under the Virginia case of *Hudson* v. *Hudson*, cited above, and the English case cited by Sugden decided by Lord Alvanley, negativing an exclusive appointment. Here it is "give to the children." What appreciable difference between that language and saying dispose of "among the children?" As the language in the case in hand is, it falls exactly under the English case of *Walsh* v. *Wallinger*, 2 Rus. & M. 78, cited 2 Lomax Dig. 171, where the bequest

was to the wife for life, and at her decease she was to "give and bequeath the same to her children by me in such manner as she shall appoint." The master of the Rolls said: "The question is, whether the words 'in such manner as she shall appoint,' import that the widow was to have the power to exclude any of the children, or merely that she was to give the property to them in such shares as she might think fit, and as might best suit their circumstances. If the direction had been that at her death the property should go *to the children* as she should appoint, all the children, according to decided cases, must have taken. There is no sensible or substantial distinction between such a direction and the expressions used here. Therefore all the children are entitled *etc.*"

And observe there are no such words as "such of the children," "or any of the children," or "any one or more of the children as she may think proper," or any words of like character importing an exclusive appointment. Before imputing to a father an intent to be partial among his children to the extent of wholly excluding one of them from participation in his bounty, we should ask words from him very plainly telling of such intent. The courts in the construction of instruments lean towards equality between children in the eyes of parents when bestowing their property, and will not adopt a construction excluding any from their equal favor and bounty unless compelled to do so by language unmistakably evincing such an intention.

Returning now to the deed, notice the location in the context of the words "as she may think proper." They do not mean such of the children as she may think proper. They define or relate to the words "such portion," meaning that she may give such portions of the property as she may think proper to the different children, as might best suit their circumstances. And further, the fact that the donor had in view all the children as beneficiaries under the deed is shown by the provision that if any of them married or arrived at age, such child or children should have such portion as Matilda Stoner should direct. If she had absolute discretion to give exclusively to one child, and the children no right except subject to such discretion, why this clause?

She must under it have given to both children if both married. And furthermore, the only absolute power in Mrs. Stoner to give "the whole estate" to whom she pleased is in the provision that if she outlived her husband and children she might dispose of the whole as she pleased, and this is a circumstance not without weight in denial of her absolute discretion to give all to any one child.

Thus, upon an analysis of the phraseology of this deed, I conclude that the appointment was intended to be made to the children generally as a class, and that the doctrine found in 2 Lomax's Dig. 170, § 17, applies: "Where a person has the power of appointing an estate or a sum of money *unto and among* his children, or any other class of persons, in such shares or proportions as he shall think proper, the appointer must give the whole among the children, or class; and each of them must have such a fair and reasonable share as is not illusory."

Unquestionably the appointer, Matilda Stoner, had discretion what kinds of property, real or personal, and what parts of it should go to the children, respectively. In *Steele* v. *Livesay*, 11 Gratt. 454, property was given to the wife "to dispose of to each of my children in any way she may think proper and right," and it was held she had discretion to distribute in such manner and such kind of property as she choose. But it may be said that under this discretion Mrs. Stoner might give one child substantially all the estate, and give another only a nominal amount. This is not so, for this would be what is in equity called an illusory appointment. At law any share, however nominal, as a ring or ·a shilling out of £ 100,000 was a valid appointment under the power, but in equity it would be illusory and void. An equal distribution in amount is not, however required, and very large latitude of discretion is allowed the appointer. 2 Minor In. 743; *Rhett* v. *Mason*, 18 Gratt. 541; 2 Lomax Dig. 170, 172; 2 Greenleaf's Cruise on Real Prop. 257; 2 Sugd. Powers 581.

Thus the execution of the power attempted by Matilda Stoner in her will is void because it gave the whole tract to one of the sisters ignoring the other; for it is well settled that the execution of a power must follow the instrument

creating it, and especially must give those who are beneficiaries under it. 2 Minor In. 741, 743; 2 Lomax Dig. 162.

There is no appearance that there was any of the property conveyed to Nossinger or its proceeds in existence save this land, so as to say that the forgotten sister might have received her share from it. As the power must be executed by the will, even had there been other property, and the forgotten sister had gotten it, we could not say this will was a valid execution at least in a court of law. No other will or testamentary paper giving that sister anything appears.

So it is that the power of appointment remains unexecuted. What then? The dry legal title was in William Nossinger, the trustee. It never shifted from him by the valid execution of a power of appointment, and on his death would go to his children, Mrs. Thrasher and Mrs. Buford. *Frazier* v. *Frazier*, 2 Leigh. 642; *Knight* v. *Jarbough* and *Hudson* v. *Hudson, supra.* Whether the power in Matilda Stoner were a mere naked power, or a power coupled with a trust, such as a court of equity would compel to be executed, if the law recognizes her as vested with any estate and it is descendible, it would pass to these same children, she being dead. *Cruse* v. *McKee*, 73 Am. R. 186. In all views, then, under or outside the power the land vested in those two sisters equally and Mrs. Thrasher had only half of it, as decided by the Circuit Court. *Frazier* v. *Frazier, supra, Knight* v. *Jarbough, supra, Cruse* v. *McKee, supra.* It has been suggested that this attempted or colorable execution of the power ought not to be held void in a court of law. Is it meant that resort must be had to equity to annull it, and that a court of law should in the meantime hold it good? I find no warrant in the books to say that an execution of power departing materially from the instrument raising it, practically a non-execution, is not to be held void in a court of law. Indeed, a court of law is more technical than one of equity, and would hold an execution of a power void for causes for which equity, looking at substance, not form, would not. 2 Greenleaf's Crim'l Re. Prop. 202.

It is the very fact that courts of law hold the execution of appointments void for failure to comply rigidly with the instruments creating them that has given rise to a jurisdiction exercised in equity, not to execute in case of non-execution, but under limited circumstances to aid defective or informal execution. 2 Washb. R. Prop. 317; 2 Lomax Dig. 175, chapter 14, section 1.

As to the argument that Mrs. Buford is not complaining, the court should not on its own motion hold void the act of execution of the power. But the plaintiff in ejectment must show title and recover on it, not on the weakness of his adversary's title.

Finally, it is said that there was no evidence that Mrs. Buford was alive at the death of her mother so as to have right to recognition in her will; but in clause 9 of facts agreed on a former trial it is stated that Daniel and Matilda Stoner left these two children, and it is stated in the record of this trial. Moreover, as she was in existence at a comparatively recent period, she is presumed to live yet, until she is proven dead, or until a much longer period shall have elapsed. The law does not absolutely and inflexibly fix any period short of an age impossible to be attained under human experience, as men have been known to live far beyond a century in modern times. The civil law presumed that a man might live one hundred yards. See 1 Greenleaf Ev. § 41; Whart. Crim. Ev. § 810.

For these reasons the judgment is affirmed.

Affirmed.