[No. 2654.  Decided October 8, 1897.]

JANEY C. W. HUNT, *Executrix, Appellant*, v. EDWARD WOODS HUNT, *Respondent.*

WILLS — CODICIL — CONSTRUCTION TOGETHER — PRECATORY TRUSTS.

A will and codicil must be construed together and the one general intent pervading both must be gathered.

A declaration in a will, that the testator " desires $15,000 to be given to our foster son, Edward Woods Hunt, at any time convenient to my executrix," constitutes neither a bequest nor a precatory trust, when the will provides that, with the exception of a single specific bequest, all the testator's property shall go to the wife, with the suggestion that she live upon the income thereof, but, in case that should not be sufficient for her support, she shall have "full privileges to use such of the principal as she may require, without any contests or objections from any other heir or heirs," and it appears that if said sum

of $15,000 should be allotted to the foster son, there would be nothing for the bequest in favor of the wife to operate upon, and nothing for certain residuary legatees for which the will provides.

Appeal from Superior Court, Pierce County.—Hon. W. H. H. KEAN, Judge. Reversed. .

*T. L. Stiles,* for appellant:

The original will stands as the controlling instrument, for it is a principle of testamentary construction that a codicil is to be taken as exceptional only, the will remaining the controlling instrument, both as to its objects and its dispositions. Schouler, Wills, §§ 409-437.

Conflicting provisions in a will must be so construed as to carry out the testator's predominant idea, and a provision for a widow will receive the most favorable construction to accomplish the purpose intended. *Thurber v. Chambers,* 66 N. Y. 42; *Stimson v. Vroman,* 99 N. Y. 74.

I have been able to find but one case where such a phrase as " at any time convenient to my executrix," has been before a court. *Phillips v. Phillips,* 112 N. Y. 197 (8 Am. St. Rep. 737).

*George H. Walker (Walker & Fitch,* of counsel), for respondent:

" Precatory words in a will equally with direct fiduciary expressions will create a trust; the wish of a testator, like the request of a sovereign, is equivalent to a command." We have made a careful search of the authorities and believe that out of the mass the following will be the most helpful to the court in deciding the question before it: *Murphy v. Carlin,* 20 S. W. 786 (35 Am. St. Rep. 699); *Noe v. Kern,* 6 S. W. 239 (3 Am. St. Rep. 544); *Bohon v. Barrett,* 79 Ky. 378; *Harrisons v. Harrison's Adm'x,*

44 Am. Dec. 365; *Colton v. Colton*, 127 U. S. 300; *Warner v. Bates*, 98 Mass. 274; *Handley v. Wrightson*, 60 Md. 198; *Major v. Herndon*, 78 Ky. 123; *Eddy v. Hartshorne*, 34 N. J. Eq. 419; *Knox v. Knox*, 59 Wis. 172 (48 Am. Rep. 487); Story, Equity Jurisprudence (13th ed.), §1068 *et seq.;* Hill, Trustees, 108; Lewin, Trusts, 104 *et seq.;* 1 Jarman, Wills (Rand & T. ed.), p. 680.

The opinion of the court was delivered by

REAVIS, J.—Appeal from part of an order of distribution, in the superior court of Pierce county, of the estate of Edward M. Hunt, deceased. The court decreed " that the sum of $15,000 be distributed and paid by said executrix, in due course of administration, to Edward Woods Hunt, or his lawfully appointed guardian, for his use and benefit." The review here involves the construction of the will of Edward M. Hunt, deceased. The original will was executed in December, 1884, at Rock Island, Illinois. The material clauses are as follows:

" To my dear wife, Janey Campbell Woods Hunt, I give all property I may die possessed of, both real and personal, after all debts I may owe are paid. And I make Janey Campbell Woods Hunt, my wife, sole executrix of this will and testament.

" She is to take full possession at my death of all property and interests of mine, and control and manage the same without molestation or hindrance from any one.

" But it is my desire that should the property I leave yield an income sufficient to support my wife, that she live upon said income, and never draw from the inheritance, except in case of absolute necessity. And should she marry again, I desire that no part of my estate should ever be invested in any business enterprise or speculations that her second husband might be engaged in.

" These are merely suggestions that I make for the guidance of my wife in managing the estate (her property), and

are not clauses a violation of which will in any ways affect her title to all of my estate.

"At the death of said wife she is to make no will bequeathing any part of her inheritance from me to any one, but it is to be divided equally among the children of my sisters, Sarah, Ellen and Octavia, and my brother, Howard, or their heirs.

"But should there be any increase of property, while under her management, such increase may be disposed of by her (my wife), as best suits her.

"I make my wife sole executrix of this will and testament, because by so doing I believe I will contribute more fully to her comfort and happiness, and my confidence in her is so great that I believe she will respect my suggestions and wishes and prove a faithful stewardess."

A codicil is attached to the will, executed October 16, 1895, at San Francisco, California. In it it is declared that the codicil in regard to the bequests cancels those in the original will and substitutes the following:

"I desire my interest in the firm of Hunt & Mottet to be converted into money, from which I bequeath to my sister Sarah Five Thousand Dollars ($5,000), to be given her immediately from the first moneys received from sale of said business.

"I desire Fifteen Thousand Dollars ($15,000) to be given to our foster son, Edward Woods Hunt, at any time convenient to my executrix. Such residue as there may be at the death of my wife I wish her to distribute by will equally between the children of my sister Sarah and my brother Howard.

"Should the revenues from my estate not be sufficient for my wife's support, she, as executrix, has full privileges to use such part of the principal as she may require, without any contests or objections from any other heir or heirs."

The testator executed this codicil just before undergoing a dangerous surgical operation, and died after the operation, on the 17th of October, 1895. He was a resident of Ta-

coma at the time of his death, and temporarily in San
Francisco for medical treatment.    He left surviving his
wife, the appellant, but left no child or other descendants.
The entire estate of the deceased was acquired subsequent
to marriage with his wife, the appellant.    Edward Woods
Hunt, the respondent, is a minor, and from his infancy
lived in the family of the deceased, and since the death of
the deceased has been lawfully adopted as the child of
the appellant, Janey C. W. Hunt; and he is the son of a
sister of appellant.    The codicil is in the handwriting of the
appellant, and is the joint composition of deceased and his
wife, and it was at the request of his wife that the deceased
caused the provision concerning the respondent to be in-
serted in the codicil.    The valuable part of the estate at the
time of the distribution consisted of money and promissory
notes aggregating about $36,000.    The real estate is of
small value.    Under the provisions of the will there was
left for distribution about $18,000 and one-half the real
estate.    From this was taken a special bequest of $5,000 to
the sister of the deceased.

Appellant maintains that the effect of the codicil is to
vary the original will as follows:  It bequeathes to the tes-
tator's sister, Mrs. Smith, $5,000; it withdraws the pro-
vision for some of the testator's nephews and nieces, and
while permitting appellant full freedom to use the income
and, if necessary, the principal of the estate for her sup-
port, it permits her to give Edward, the foster son, her
nephew, the sum of $15,000 at her convenience, and it
enjoins upon her that she dispose of the residue of the
estate by will at her death to the children of the testator's
sister and brother, Sarah and Howard.    Appellant tendered
the following in lieu of that part of the decree of the supe-
rior court relative to Edward Woods Hunt, to-wit: "I de-
sire $15,000 to be given to our foster son, Edward Woods

Hunt, at any time convenient to my executrix" is void and of no effect as the testamentary disposition of the estate of deceased, or any part thereof;" which was refused, and it is here maintained by appellant that such is the correct construction of the will.

Counsel for respondent appears to argue that a precatory trust was created in the codicil in favor of respondent, and that it was a bequest in trust to appellant for the benefit of respondent, and payable when the court determined it was convenient and proper. A precatory trust arises out of words of "entreaty, wish, expectation, request or recommendation, frequently employed in wills," and a trust has been created by such words as "hope," "wish," "request," etc., if they be not so modified by the context as to amount to no more than mere suggestions to be acted upon or not according to the caprice of the interested devisee, or negatived by other expressions indicating a contrary intention, and the subject and object be sufficiently certain.

While it is true, as maintained by respondent, that the codicil, where it specifically changes the original will, must prevail, yet both the will and codicil must be construed together, and the one general intent pervading both must be gathered. It will be observed that in the original will three sisters and a brother were made heirs to the residue of the estate, after the death of the wife, and it was also suggested,—and specially stated to be a mere suggestion,—that the wife should live upon the income and never draw from her inheritance except in case of absolute necessity. The language of the will was clear. The heirs were specifically mentioned, but no provision was made for the foster son, respondent. In the codicil, executed some ten years later, and the joint composition of deceased and his wife, a specific bequest is made to his sister Sarah, payable immediately from a certain source, and the residuary lega-

tees were changed, only the children of the sister Sarah and brother Howard being mentioned. The chief intent evinced in both original will and the codicil, is the comfort and happiness of, and the confidence of the testator in, his wife. It is repeated in the latter part of the codicil that, should the revenues from the estate not be sufficient for his wife's support, " she, as executrix, has full privilege to use such part of the principal as she may require *without any contests or objections from any other heir or heirs.*" The mention of the respondent's name in the codicil, and the provision for him, was made at the request of his foster mother, the appellant. The condition and value of the estate of the deceased must have been before him at the time the codicil was executed. It would have been an idle and illusory provision for his wife to have left her property of the value of about $18,000, with a specific direction to pay to Mrs. Smith $5,000 immediately, and $15,000 to the respondent as soon as the property was converted into money. This more than exhausted the estate which the testator possessed at the time. The more natural construction, in view of the condition of the estate and the surroundings of the testator and his wife, leads to the conclusion that the provision relative to respondent, inserted in the codicil at the request of the wife, was permissive in its nature and authorized appellant at any time at her convenience to give the respondent the $15,000. In the original will all that was left of the estate was devised to relatives of the testator. The codicil changed this and authorized the wife to provide for their foster son and at her death to distribute by will what remained of the estate to the relatives of testator mentioned. The testator then conferred upon his wife the ownership of his whole estate with absolute power to sell, dispose of and manage the same in her discretion, to change the form of the property as she might

think proper, and during her life time to enjoy the revenues from the whole estate and also to use any portion of the principal for that purpose as she might require, without any objection from any of the residuary legatees.

The part of the order of distribution made by the superior court appealed from is reversed, and the court directed to distribute the estate to appellant in conformity to the construction of the will heretofore made.

DUNBAR, GORDON and ANDERS, JJ., concur.