[L. A. No. 5687.  In Bank.—March 13, 1920.]

# In the Matter of the Estate of MARCOS A. ELIZALDE, Deceased.

[1] SUBROGATION—SCOPE OF SECTION 2848, CIVIL CODE.—Section 2848 of the Civil Code, providing a surety upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal, does not comprehensively and exclusively measure the rights of sureties to subrogation, but is merely declaratory of the common law on the subject and controlling only so far as it goes.

[2] COMMON LAW—EXTENT OF OPERATION.—The common law, except so far as it is inapplicable to conditions, or has been modified by statute, still remains in force.

[3] ID.—CONSTRUCTION OF CODE IN RELATION TO COMMON LAW.—The Civil Code was not designed to embody the whole law of private and civil relations, rights, and duties, and except in those instances where its language clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning a particular subject matter, a section of the code purporting to embody such doctrine or rule will be construed in the light of common-law decisions on the same subject.

[4] SUBROGATION—COMMON LAW.—By the common law a surety, upon satisfying his principal's obligation, is entitled to be subrogated not only to the rights and remedies of the creditor against the principal connected with the debt, but is also entitled to be subrogated to the similar rights and remedies of the principal against the creditor.

[5] ID. — INSOLVENCY OF ADMINISTRATOR — PAYMENT OF DEBT BY SURETY—EXTENT OF SUBROGATION.—A surety on an insolvent administrator's bond who has paid his principal's debt is entitled to be subrogated not only to the rights of the creditor, but also to those of his principal.

[6] ID.—ADVANCEMENTS BY DECEASED ADMINISTRATOR TO DISTRIBUTEE—RIGHTS OF SURETIES ON FINAL DISTRIBUTION TO SUBROGATION.—Sureties on the bond of a deceased administrator who were required by a judgment obtained against them to pay the amount due from the deceased to the estate are entitled on final distribution to be subrogated to the rights of their deceased principal to have distributed to them the amount of advances made him to a distributee on account of her share of the estate.

[7] ESTATES OF DECEASED PERSONS—SERVICES OF ADMINISTRATOR—RENDITION WITHOUT COMPENSATION—ABSENCE OF PRESUMPTION.—

There is no presumption that an administrator's services are rendered gratuitously.

[8] ID.—CONTEST OF ACTION ON BOND—COMMISSIONS OF DECEASED ADMINISTRATOR—RIGHT OF SURETIES NOT LOST.—Sureties on the bond of a deceased administrator by contesting in a legal proceeding their liability for the payment of moneys not accounted for by their deceased principal did not lose their equitable right of subrogation on final distribution to the commissions due the deceased for his services.

[9] ID.—MISAPPROPRIATION OF FUNDS BY ADMINISTRATOR — LIMIT OF LIABILITY.—The limit of the liability of an administrator for failure to account for assets of the estate is the return of the principal sum with legal interest thereon compounded annually, in the absence of a showing that a larger profit was realized therefrom.

[10] ID.—RECOVERY FROM SURETIES—ATTORNEY'S FEES—DEDUCTION FROM COMMISSIONS UNWARRANTED—JUDGMENT RES ADJUDICATA.—A judgment in an action on the bond of a deceased administrator for moneys of the estate not accounted for is *res adjudicata* as to the claim of the estate, and on final distribution the estate cannot claim the right to deduct from the commissions the sum paid out for attorney's fees in recovering the amount of the defalcation.

[11] ID.—ADVANCEMENTS TO DISTRIBUTEES—REIMBURSEMENT OF ADMINISTRATOR—PROCEDURE.—Where an administrator, in anticipation of distribution, makes payments to the widow or other heirs on account of their distributive shares, such payments are not a proper subject of final account, and his only rights are, when distribution is ordered, to have the payments retired therefrom, and to receive a credit on account thereof from the distributive share to be charged.

[12] ID.—RIGHTS OF SURETIES TO SUBROGATION—TIME OF ADJUDICATION—FINAL DISTRIBUTION.—Whatever rights of subrogation the sureties on the bond of a deceased administrator may have to his rights against distributees, the same can only be worked out upon the final decree of distribution.

APPEAL from a Decree of Distribution of the Superior Court of Santa Barbara County. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

B. F. Thomas for Appellants.

Wm. Shipsey and S. V. Wright for Respondent.

THE COURT.—This is an appeal from a decree settling the final account of Elisa P. Curletti, administratrix of the estate of Marcos A. Elizalde, deceased, and ordering distribution of the estate.

Upon this appeal, taken by Victoria C. Elizalde, the widow of the deceased, and by the said administratrix, Elisa P. Curletti (née Elizalde), a daughter of the said decedent, they seek to have reviewed that part of the decree wherein the court ordered paid to the respondents, Gaspar O. Marre, as administrator of the estate of Luigi Marre, deceased, and A. McAlister, certain sums, representing advances and interest thereon made to said Victoria C. Elizalde, on account of her distributive share of said estate, by one Ernest Graves, a former administrator now deceased, and the amount of commission due Graves as such administrator, said respondents being respectively a surety and administrator of the estate of a surety upon the bond of said Graves as administrator of said estate, who had appeared and contested the settlement of said final account of said administratrix.

Growing out of different phases of the controversy four appeals have been taken and decided by the appellate courts of this state (*Elizalde* v. *Murphy,* 146 Cal. 168 [79 Pac. 866]; 4 Cal. App. 114, [87 Pac. 245]; 11 Cal. App. 32, [103 Pac. 404]; and 163 Cal. 681, [126 Pac. 978].)

So far as may be necessary for an understanding of the questions involved in the present appeal the facts giving rise to the differences between the parties may be summarized as follows: Marcos A. Elizalde died intestate on December 1, 1891, leaving as sole surviving heirs the appellants Victoria C. Elizalde, his widow, and Elisa P. Curletti, née Elizalde, his daughter. Ernest Graves, an attorney at law, was at different times special and general administrator of the estate of said deceased, being such general administrator from February 28, 1894, until July 15, 1900, on which day he died without having rendered a final account and leaving the administration of said estate unfinished. During his administration he had filed four separate accounts. In the last of these, which was filed on July 9, 1898, it appears that he had in his possession funds of the estate to the amount of $5,133. Thereafter, on April 8, 1901, Elisa P. Curletti was appointed administratrix of said estate, and during the course

of her administration she commenced an action against the sureties on the bond given by Graves as administrator, to which suit the latter's administrator was subsequently made a party defendant. Final judgment in that action was entered in favor of the plaintiff and against the sureties (who at that time were Gaspar O. Marre, administrator of the estate of Luigi Marre, and A. McAlister) in the sum of $12,131.14, which was made up, according to the findings in this proceeding, of the sum of $5,133, balance in the hands of Graves, according to his last account, together with other moneys collected by him after filing that account, less certain credits to which he was entitled, making finally due from him to the estate the sum of $4,342.15, to which was added interest thereon at the rate of seven per cent per annum from July 15, 1900, to January 20, 1911, compounded annually. That judgment was paid by said sureties in fulfillment of the obligation of their bond, and it amounted, with costs and interest, at the time it was paid, to $14,168.03. At the trial of that case said sureties sought to be credited with the amount of certain advances made by Graves to the widow of Marcos Elizalde, deceased, and with the amount of his administrator's commissions, but it was finally held upon appeal (*Elizalde* v. *Murphy*, 4 Cal. App. 114, [87 Pac. 245]) that such credits, if proper, could only be allowed upon the settlement of the final account and decree of distribution.

On September 17, 1913, Elisa P. Curletti filed her final account as administratrix, and petitioned for distribution. To this account and petition said sureties filed their written contest, in which they alleged, in part, that Graves, as administrator, had advanced to Victoria C. Elizalde, who was entitled to have distributed to her a certain share of the estate, $930 out of the funds of the estate, which had not been repaid and for which no credit had ever been allowed to him; they also alleged that Graves, as administrator, was entitled to commissions, which also had not been credited or paid to him. The court found these allegations of the contestants to be true, and also that "in the accounting had between said administratrix and said contestants, Marre and McAlister as bondsmen aforesaid, in said equitable action of *Elizalde* v. *Murphy et al.*, the court charged said contestants with said sum of $930, together with interest thereon at the

rate of seven per cent per annum from July 15, 1900, to January 20, 1911, compounded annually, making $1,214.73 interest, and making a total of $2,144.73 for principal and interest, and said sum of $2,144.73 became and formed a part of said judgment of January 20, 1911, for $12,131.14 which was paid by said contestants to said administratrix as aforesaid." The court further found that the aggregate of the commission for which the estate was liable to the former administrator, Graves, and the present administratrix, Elisa P. Curletti, was the sum of $2,358.68, of which sum the former was entitled to $1,604.95. The court also found that Graves rendered to the estate extraordinary services, as alleged in the amended contest, but that he was not entitled to any additional compensation. Continuing its findings the court proceeds: "By reason of the facts herein found said contestants have become and are subrogated to the rights of said administrator to recover from and have paid to them out of said estate the aforesaid part of said commissions to which said administrator was entitled, namely, the sum of $1,604.95.

"By reason of the facts herein found said contestants have become and are subrogated to the rights of said administrator to recover from said Victoria C. Elizalde the aforesaid sum of $930 advanced to her by said administrator as aforesaid, with interest thereon from July 15, 1900, to January 20, 1911, amounting to $1,214.73, making a total of $2,144.73, and said contestants have become subrogated to the rights of said administrator to have said sum of $2,144.73 paid to them by said administratrix out of the distributive share of the money of said estate belonging to said Victoria, and if such distributive share of money be insufficient, then to have a lien for the balance of said $2,144.73 upon the distributive share of said Victoria of the real property of said estate."

It is earnestly urged by the appellants in support of their appeal that the court committed error in concluding that the contestants were entitled to be subrogated to the rights of their principal to a setoff against the estate for the amount of his earned commission, and to have distributed to him out of the distributive share of Victoria C. Elizalde the amount of his advances to her. In passing it should be noticed that while the court in *Elizalde* v. *Murphy*, 4 Cal.

App. 114, [87 Pac. 245], said that whatever rights to subrogation the sureties might have should be adjudicated upon the hearing of the petition for settlement of the final account and for distribution, still it did not decide that they were in fact entitled to subrogation. The denial by appellants of this right of subrogation on the part of the respondents is based' on the theory that section 2848 of the Civil Code defines and limits the right of subrogation of sureties in this state, and that as so defined and limited it will not permit these respondents to claim the benefit of any rights which their principal might have had against the estate of Marcos A. Elizalde or a distributee thereof to whom said principal had made advances.

That section reads: "A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended, and also to require all his cosureties to contribute thereto, without regard to the order of time in which they became such."

The appellants argue that the contestants, by virtue of their suretyship and the doctrine of subrogation, upon payment by them of the judgment obtained against them as sureties, became subrogated to only the remedies which Elisa P. Curletti, as administratrix, had against Graves or his estate, and not to any rights of Graves against the estate of Marcos Elizalde or against Victoria C. Elizalde. [1] This, perhaps, would be true if, as asserted by appellants, section 2848 of the Civil Code comprehensively and exclusively measures the rights of sureties to subrogation. This, however, we think is not the case. That section is merely declaratory of the common law on the subject, and controlling only so far as it goes. It does not appear to us that by it the legislature intended to announce all the law on the subject. [2] In this state the common law, except so far as it is inapplicable to our conditions, or has been modified by statute, still remains in force. This principle is referred to in the *Estate of Apple*, 66 Cal. 434, [6 Pac. 7], where the court said: "The code establishes the law of this state respecting the subjects to which it relates; but this of course does not mean that there is no law with respect to such subjects except that embodied in the code. When the code speaks, its provisions are controlling; and

they are to be liberally construed with a view to effect its objects and promote justice, the rule of the common law that statutes in derogation thereof are to be strictly construed having been abolished here; but where the code is silent the common law governs."

The common law of England is declared to be the rule of decision in all the courts of this state so far as not repugnant to or inconsistent with our constitution and statutes. (Pol. Code, sec. 4468.) **[3]** The Civil Code was not designed to embody the whole law of private and civil relations, rights, and duties; it is incomplete and partial; and except in those instances where its language clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning a particular subject matter, a section of the code purporting to embody such doctrine or rule will be construed in the light of common-law decisions on the same subject. (*Siminoff* v. *Goodman & Co. Bank*, 18 Cal. App. 5, 11, [121 Pac. 939].)

**[4]** By the common law a surety, upon satisfying his principal's obligation, is entitled to be subrogated not only to the rights and remedies of the creditor against the principal connected with the debt, but is also entitled to be subrogated to the similar rights and remedies of the principal against the creditor. In Sheldon on Subrogation, at section 1, it is said: "Subrogation is a doctrine of equity jurisprudence although its principles are often applied in courts of common law; especially in those states in which equitable remedies are administered through the forms of law. It is a substitution ordinarily of another person in the place of a creditor. . . . More broadly, it is the substitution of one person in the place of another, whether as a creditor or as the possessor of any other rightful claim. . . . In this country its principles have been more widely developed and its doctrine more generally applied than in England. . . . It is so administered (here) as to secure real and essential justice without regard to form. . . . "

**[5]** A surety on an insolvent administrator's bond who has paid his principal's debt is entitled to be subrogated not only to the rights of the creditor, but also to those of his principal. (37 Cyc. 434. See, also, Sheldon on Subrogation, sec. 100; Harris on Subrogation, sec. 551; *Common-*

CLXXXII Cal.—28

*wealth* v. *Gould,* 118 Mass. 300; *Putney* v. *Fletcher,* 140 Mass. 597, [5 N. E. 640].)

[6] It follows, therefore, we think, that the construction advocated by the appellants, which would confine the surety's rights of subrogation to those derivable from the creditor, is not the true rule, and that the court below correctly apprehended it in its adjudication in this proceeding.

As to the commission due to Graves as administrator, the evidence in our view sustains the finding that Graves did not waive such commission. According to the terms of the last account rendered by him, he withdrew from consideration in that account the question of his compensation and reserved it for settlement upon the final account. [7] Indeed, there is no evidence in the case to sustain the view that Graves waived his commission, and as there is no presumption that an administrator's services are rendered gratuitously, it is clear that appellants' contention that the trial court should have found Graves waived his commission as administrator cannot be successfully maintained.

Equally without merit, we think, is the assertion by appellants that the evidence fails to sustain finding No. 25. This finding correctly computes the total amount due as commissions upon the administration of the estate, makes a fair and just apportionment thereof between the two administrators, and also decrees that Graves was not entitled to an extra allowance for extraordinary services rendered as an attorney at law.

Upon this subject there remains to be considered the appellants' contention that the contestants are entitled to no credit for commission earned by Graves for two reasons; first, because of his dereliction of duty, and, second, that there should be deducted therefrom the sum paid out of the funds of the estate as an attorney's fee for services in recovering from said contestants as sureties the amount of Graves' defalcation, and which fee amounted to more than the earned commissions. [8] We think there can be no serious doubt that these contestants had a perfect right to their day in court for an adjudication of their rights and obligations under the bond, without thereby losing their equitable right of subrogation in respect of payments made as the result of the judgment obtained against them in that action, or of commissions to become due to their principal.

[9]   And as to the failure of the administrator to account for assets of the estate, assuming that the misappropriation thereof was willful instead of careless, still the limit of his liability where, as here, it was not shown that a larger profit was realized therefrom, is the return of the principal sum with legal interest thereon compounded annually (*Estate of Cousins,* 111 Cal. 441, 445, [44 Pac. 182]; *Estate of Carver,* 123 Cal. 102, 104, [55 Pac. 770]), which, as we have seen, was recovered by the estate.   [10]   But aside from all this, the claim of the estate of Marcos Elizalde, deceased, arising from the dereliction of its administrator was heard and determined in the action against the sureties, and is hence *res adjudicata.*

We are also satisfied that the evidence supports the finding that the $930 advanced to Victoria C. Elizalde was out of the funds of the estate and was not a personal loan by Graves.   It is true that the latter did not, in any of his accounts, credit himself with the advances going to make up this sum, but the trial court was justified in inferring that this omission was due to the fact that the sums so advanced were not, strictly speaking, disbursements made in the course of administration, and, hence, not to be credited in his accounts, but could properly be reserved until distribution of the estate was ordered.   Moreover, Mrs. Elizalde in her testimony, taken upon this and previous trials, stated that she received the amount in question from Graves and that it was not a personal loan.

It is also clear that this sum of $930 was included in the amount which the court in the previous trial had found that Graves had misapplied and which his sureties were required to refund to the estate.   As they were compelled to pay this sum with interest compounded annually, they are entitled to be reimbursed therefor out of the distributive share of Victoria C. Elizalde, to whom the advances were made.

[11]   ''Where an administrator in anticipation of distribution makes payments to the widow or other heirs on account of their distributive shares, such payments are not a proper subject of final account, and his only rights are, when distribution is ordered, to have the payments retired therefrom, and to receive a credit on account thereof from the distributive share to be charged.   [12]   Whatever rights of subrogation the sureties on the bond of a deceased ad-

ministrator may have to his rights against distributees, the same can only be worked out upon the final decree of distribution.'' (*Elizalde* v. *Murphy*, 4 Cal. App. 114, syllabus, [87 Pac. 245].) The court below appears to have followed the rule laid down in the case cited; and sitting as a probate court with exclusive jurisdiction in the matter of the settlement of the accounts of the administrator and the distribution of the estate, has allowed the sureties on the administrator's bond to receive from the estate upon such distribution sums advanced by their principal to a prospective distributee of the estate, or due to him as administrator's commissions, and the former of which by a prior judgment against them upon the bond on which they were sureties they had been compelled to restore to the assets of the estate.

Gaspar O. Marre, administrator of the estate of Luigi Marre, deceased, and A. McAlister, whom we have at times designated in this opinion as the respondents, have also appealed from the order settling the final account of the administratrix and ordering distribution of the estate. They question the court's action in the division of the commissions between the two administrators, in its disallowance of extra compensation for extraordinary services by administrator Graves, and in refusing to allow their demand for interest upon the judgment paid by them in favor of the estate of Marcos A. Elizalde, deceased. The correctness of the decision of the first two mentioned of these questions depended upon the evidence presented to the trial court, and its decision thereon will not be disturbed upon appeal. As to the remaining point, no argument or authority is presented in its support, and it appears to be without merit.

For the reasons given the order appealed from is affirmed.

Rehearing denied.

Angellotti, C. J., Shaw, J., Lawlor, J., Wilbur, J., Olney, J., and Kerrigan, J., *pro tem.*, concurred.