[Civ. No. 17876. Second Dist., Div. One. May 17, 1951.]

MARCUS L. ROBERTS, Appellant, v. FRED L. WACHTER et al., Respondents.

Marcus L. Roberts, in pro. per., and Elmer Patrick Friel for Appellant.

Earl D. Killion for Respondents.

DRAPEAU, J.—By the instant action, plaintiff seeks a declaration of the rights of the parties, and recovery of damages (1) against defendant Drudis for breach of trust; and (2) against defendants Wachter and Douglass for having induced such breach.

It is a so-called companion case to *Roberts* v. *Wachter*, Civil No. 17864, this day decided, *ante*, p. 271 [231 P.2d 534]. Both actions are based upon the same agreements. The first is to recover money due thereunder for the year 1945, while the instant action covers a period subsequent to January 1, 1946.

Demurrers were sustained to plaintiff's amended complaints first to fifth, inclusive, with leave to amend. Thereafter plaintiff filed his sixth amended complaint to which general and special demurrers were sustained without leave to amend. The latter ruling was set aside on motion, and upon reconsideration, the demurrers were again sustained without leave to amend. From the ensuing judgment, plaintiff appeals.

It is here urged that the court erred in sustaining the demurrers and abused its discretion in denying appellant the right to amend his complaint.

The first and second causes of action of the sixth amended complaint are directed against respondent Drudis. The first alleges that appellant is an active member of the State Bar of California; that he and said Drudis made an oral agreement in January, 1942, to acquire an interest in a wholesale produce commission business; respondent to finance the same but to take no active part; appellant "to represent said interest, help in the formation of said business and thereafter manage and devote such time and attention to said business as conditions warranted aside from actually conducting said business himself"; that appellant should have no *quantum meruit* claim against Drudis for his services "but would be entitled to 50 per cent of net profits from said business interest, after first deducting and allowing Drudis an amount equal to 5% per annum on his invested capital therein."

Accordingly, the business was acquired and operated, appellant devoting thereto 8 to 10 hours of his time daily until June 22, 1942, when Drudis interfered with his management

and requested him to leave. Appellant rescinded the agreement and left, but received no compensation for his time or efforts theretofore expended.

Shortly thereafter, when the business showed a deficit of $16,130.47, appellant and Drudis renewed their association, Drudis promising not to interfere with appellant's management, and because of prior business dealings, it was understood that appellant should receive 50 per cent of the net profits from Mr. Drudis' interest after allowing the latter 5 per cent on his investment. At this time, appellant induced the financial advisors of Mrs. Drudis to approve an advance of $20,000 to refinance the business.

Appellant proceeded to organize the partnership of Drudis, Means and Wachter for a period of five years ending July 31, 1947, in which respondent Drudis was to take no active part. At this time, in order to help Mr. Drudis recoup the loss he had previously sustained in the business, appellant voluntarily agreed to reduce his percentage of the profits from 50 per cent to a straight 1/6th during the term of the partnership or "any partnership thereafter to be created for carrying on such business in which Drudis held an interest."

In order to acquaint the partners "with the terms of the fiduciary relationship then existing between appellant and Drudis and to authorize the payment of plaintiff's share of the profits direct to him," respondent Drudis signed a written memorandum of said agreement on October 9, 1942, to wit:

"For and in consideration of legal services heretofore rendered and hereafter to be rendered by Marcus L. Roberts for and in behalf of Jose Drudis in connection with his farming and/or produce house undertakings, the said Jose Drudis has agreed, and by these presents does agree, to pay to the said Marcus L. Roberts, one-sixth (1/6th) of whatever he receives or is entitled to receive, including drawing account paid to him out of and from any produce or farming partnership business of which he is a member. Said compensation and services to continue during the life of the present partnership of Drudis, Means and Wachter, and during any other partnership hereafter created as a result of death or change of membership therein.

"And the said Jose Drudis hereby authorizes the partnership of Drudis, Means and Wachter to pay the compensation of Marcus L. Roberts direct to him.

Dated October 9, 1942. (Signed) Jose Drudis."

Appellant constantly kept himself informed on the operation of the business under conditions which required less of his time than under the original agreement; was at all times ready and willing to give more time if necessary, and did render all the services required "under the terms of the agreement evidenced by said memorandum dated October 9, 1942, until on or about September 20, 1946, when Drudis again and without cause, breached and repudiated his agreement with plaintiff, and made further performance thereunder impossible."

It is then alleged on information and belief "that owing to plaintiff's nonrepresentation of the interest financed by Drudis, said interest has not received nor been credited with the share of the net profits due it."

That when the said partnership was terminated on July 31, 1947, the business was perpetual and since that date has been carried on under a new partnership, i. e., Drudis, Wachter and Douglass, which was formed for another five-year period. It is alleged that Drudis entered into the new partnership without the help, advice or experience of appellant, thereby causing the interest held in Drudis' name to become greatly depreciated in value. Its percentage of profits was reduced from 44.77 per cent to 33.33 per cent, to the detriment of appellant. That appellant demanded his share of the profits accruing since January 1, 1946, but respondent Drudis has refused to comply therewith or to make any accounting to appellant.

Appellant then alleges a relationship of trust and confidence between him and Drudis; alleges that all of his agreements and dealings were fair and equitable and free from undue influence in their making, but that Drudis, contrary to his obligation of utmost good faith toward appellant, "seeks unjustly to enrich himself by retaining for himself all the profits which have accrued and will accrue to said business interest since January 1, 1946.

"That by reason of the premises, Drudis has become and now is a trustee for plaintiff of said interest and of the profits derived and to be derived therefrom since January 1, 1946, which trust is subject to the terms of their said agreement.

"That Drudis, by his aforesaid acts and breach of said agreement, has caused plaintiff the loss of the moneys which would have come to him from a division of the profits made from the interest financed by Drudis and those that could

have been made under plaintiff's supervision thereof subsequent to January 1, 1946, as well as the loss of all future moneys from said source, all of which has caused plaintiff damages in the sum of $68,000.00, no part of which has been paid.''

The second cause of action incorporates by reference that portion of the first cause of action with respect to the terms of the oral agreement of January, 1942. It is then alleged that neither Wachter nor Means contributed to the capital of the partnership and waived all their rights to any assets at its termination on July 31, 1947. After reciting the amounts received in 1942, 1943, and 1944 by respondent Drudis, after payment of one sixth of his share to appellant and recoupment by Drudis of his loss sustained in 1942, appellant alleged an oral agreement between him and Drudis restoring the ''original basis for the division of profits between them commencing January 1, 1945, namely 50% . . . over and above Drudis' 5% invested capital''; that in consideration therefor appellant agreed to devote more time to the business than was then required, and it was mutually agreed that appellant should try to continue the existing partnership for another five years or form a like partnership; and if Drudis was dissatisfied that he should drop out and permit appellant to take over ''exclusively for himself'' upon payment to Drudis of whatever amount he then had invested in said business. Accordingly, appellant gave a great deal more of his time to the business and performed services not required of him by the agreement evidenced by the memorandum of October 9, 1942, until September 20, 1946, when further performance was made impossible by Drudis, who refused to recognize any obligation to appellant under said agreement because it was not in writing.

It is further alleged that the interest here in question was held by Drudis in trust; that a beneficial interest in a trust is not required to be in writing; but if the statute of frauds does apply, Drudis is estopped to assert it because of the confidential relation he occupied toward appellant; that his declarations led appellant to believe that he would fulfill his promises and that he thereby induced appellant to render services which he otherwise would not have done, because he had waived any right to a *quantum meruit* claim for them.

Prior to the termination of the Drudis, Wachter and Means partnership, appellant demanded that he be permitted to arrange a continuation of the business after July 31, 1947, or that Drudis accept from him the amount of his investment

therein, which appellant was ready, able and willing, and did in fact offer, to pay; that said demand was refused. That Drudis' refusal to carry out the terms of their agreement caused appellant the loss of the profits to which he otherwise would have been entitled, all to his damage in the sum of $68,000.

The third cause of action is directed against Wachter and Douglass, members of the new partnership, it being alleged that they had notice of the agreements between Drudis and appellant; that on June 12, 1947, to safeguard his rights thereunder, appellant gave written notice to Wachter that he would hold anyone liable who interfered with the fulfillment of the terms of such agreements. Later in June, appellant gave notice to Wachter and Drudis that Mr. Means, who had contributed greatly to upbuilding the business, had consented to remain as a partner, but Drudis and Wachter refused to consider his retention and chose in his place, J. B. Douglass, an employee of the partnership who was under the domination of Wachter. Thereupon, appellant demanded that Drudis retire and permit him to take over Drudis' interest, as agreed upon, which demand was refused.

It is further alleged that on July 31, 1947, respondents Wachter and Douglass, with full knowledge of appellant's agreements with Drudis, wrongfully induced the latter to breach the same and to enter into a contract with them to continue the business after July 31, 1947. That the latter agreement was detrimental to appellant in that it reduced the percentage of said interest in the profits of the business from 44.77 per cent to 33.33 per cent, and otherwise reduced its value to a fraction of its actual worth; that Drudis was incapable of conducting the business without appellant's help, and would have conformed to the terms of their agreements except for the deliberate and wrongful influence and persuasion of Wachter and Douglass. As a result of such wrongful acts of Wachter and Douglass, appellant's valuable rights under his agreement with Drudis have been destroyed all to his damage in the sum of $68,000.

The fourth cause of action is for a declaration of the respective rights and duties of the parties mentioned under the agreements made with Drudis.

An often repeated rule is stated in *Hardy* v. *San Fernando Valley C. of C.*, 99 Cal.App.2d 572, 577 [222 P.2d 314] as follows: "On appeal from a judgment sustaining a demurrer to a complaint the allegations of the complaint must

be regarded as true. The court must, in every stage of an action, disregard any defect in the pleadings which does not affect the substantial rights of the parties. (Code Civ. Proc., § 475.) 'Pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears.' (*Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34, 42 [172 P.2d 867].) ■ All that is necessary as against a general demurrer is to plead facts entitling the plaintiff to some relief. (*Tristam* v. *Marques,* 117 Cal.App. 393, 397 [3 P.2d 947].)''

■ In support of the court's ruling sustaining general demurrers to the first cause of action, respondents urge in their points and authorities and also in their brief on appeal that, since the agreement of October 9, 1942, was not to be performed within one year, any oral modification thereof is barred by the statute of frauds (Civ. Code, § 1624(1)). This for the reason that an agreement in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise (Civ. Code, § 1698).

The statute of frauds has no application to the oral agreement pleaded in this particular cause of action. This agreement had been reduced to writing by the memorandum of October 9th which was subscribed by Drudis, the party to be charged. This memorandum was pleaded *in haec verba,* but nowhere in this cause of action is any subsequent oral modification thereof alleged. As a result, it was error to sustain the general demurrers to appellant's first cause of action.

As heretofore stated, the second cause of action alleges the oral agreement of January, 1945, increasing appellant's share from one sixth to 50 per cent of the profits realized by respondent Drudis from his interest in the produce business. It is also alleged that such interest was held by Drudis in trust, therefore he is estopped to assert the statute of frauds as a defense.

■ Whether the relationship between appellant and respondent Drudis was that of joint adventurers, employer and employee or trustor and trustee is a question of fact. See *Nelson* v. *Abraham,* 29 Cal.2d 745, 750 [177 P.2d 931], where it is stated: ''The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner, but the inference is not drawn if the profits were received in payment as wages of an employee (Civ. Code, § 2401, subd. 4). Whether the agreement to share profits is merely to provide a measure of compensation for services or for the use of

money, or whether it extends beyond and bestows ownership and interest in the profits themselves so as to constitute the undertaking a partnership or a joint venture presents primarily questions of fact. (*Spier* v. *Lang,* 4 Cal.2d 711 [53 P.2d 138].) It has been said to be a 'mingled problem of law and fact.' (*Swanson* v. *Siem, supra,* 124 Cal.App. 519, 523 [12 P.2d 1053], citing 20 R.C.L. 849, § 55.)''

 The allegations of this cause of action reveal that appellant rendered additional services under the oral agreement of January, 1945, which were not required of him under the written memorandum of October 9, 1942; that he was induced to render these services by respondent's promise to pay him 50 per cent of the profits realized from the business; and further relying upon that promise appellant waived his right to a claim in *quantum meruit* for the value of the services so rendered.

As was recently stated in *Berkey* v. *Halm,* 101 Cal.App.2d 62, 67 [224 P.2d 885] : ''Where a party to an oral contract has been induced by the other party to seriously change his position in reliance upon, or in performance of, the contract, and would suffer an unconscionable injury if it were not enforced, or if unjust enrichment would result if a party who has reaped the benefit of the other's performance were allowed to rely upon the statute, the doctrine of estoppel will be invoked and the statute of frauds will not be available to perpetuate the fraud.''

This is a situation where an estoppel arises as a bar to the statute of frauds.

 The third cause of action alleges that respondents Wachter and Douglass with knowledge of appellant's agreements with respondent Drudis wrongfully induced him to breach his contract with appellant and enter into a contract with them to continue the business after July 31, 1947, the date of termination of the partnership of Drudis, Means and Wachter.

In support of the general demurrer which was sustained by the court to this cause of action, respondents say : ''It is true that the law in this state allows a party to recover damages against one who has induced another to breach a contract with the party complaining, but such damages are allowed only in case there has been a fraudulent or unlawful inducement''; and that the reduction of the percentage of interest that respondent Drudis held from 44.77 per cent to 33.33 per cent did not constitute a wrongful inducement.

The language employed in *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35-36 [112 P.2d 631], discloses a tendency to permit recovery of damages for inducing a breach where the means used were lawful, to wit:

"It is universally recognized that an action will lie for inducing breach of contract by a resort to means in themselves unlawful such as libel, slander, fraud, physical violence, or threats of such action. (See cases cited in 24 Cal.L.Rev. 208; 84 A.L.R. 67.) Most jurisdictions also hold that an action will lie for inducing a breach of contract by the use of moral, social, or economic pressures, in themselves lawful, unless there is sufficient justification for such inducement. (See cases cited in 84 A.L.R. 55; 24 Cal.L.Rev. 208, 209; see Sayre, *Inducing Breach of Contract,* 36 Harv.L.Rev. 663, 671; Carpenter, *Interference with Contractual Relations,* 41 Harv.L. Rev. 728, 732; Rest., Torts, sec. 766.) . . . It is well established, however, that a person is not justified in inducing a breach of contract simply because he is in competition with one of the parties to the contract and seeks to further his own economic advantage at the expense of the other."

As to the fourth cause of action, i.e., declaration of rights of the parties, respondents assert that the general demurrer thereto was properly sustained, for the reason that such rights can be determined in the other causes of action.

It appears to be the fact that an adjudication of the rights asserted in the first three causes of action would obviate any necessity for other declarations of rights.

Regarding the special demurrers which were interposed to the first, second and third causes of action upon the ground of uncertainty in several specified particulars, while the instant complaint is not a model pleading, the facts upon which appellant relies are stated with sufficient clarity to apprise respondents of the issues to be met. See *Merlino* v. *West Coast Macaroni Mfg. Co.,* 90 Cal.App.2d 106, 108 [202 P.2d 748].

For the reasons stated, that portion of the judgment which sustains the demurrers to the first, second and third causes of action of the sixth amended complaint is reversed; that portion of said judgment which sustains the demurrers to the fourth cause of action of said complaint is affirmed.

White, P. J., and Doran, J., concurred.