[Civ. No. 15479. Fourth Dist., Div. Two. Apr. 12, 1976.]

COMMERCIAL STANDARD INSURANCE COMPANY,
Cross-complainant and Appellant, v.
BANK OF AMERICA, Cross-defendant and Respondent.

**COUNSEL**

Anderson, McPharlin & Conners and Thomas J. Casamassima for Cross-complainant and Appellant.

Harris B. Taylor, Alfred T. Twigg and John A. Judge for Cross-defendant and Respondent.

**OPINION**

**KAUFMAN, J.**—Commercial Standard Insurance Company (hereinafter "Surety") appeals from an order of the trial court dismissing its second amended cross-complaint against Bank of America (hereinafter "Bank") entered after Bank's general demurrer to Surety's cross-complaint was sustained without leave to amend.

### Pertinent Alleged Facts

On August 17, 1972, Arnold R. and Mary Mendoza (hereinafter collectively "Owner") entered into a contract with International Devel-

opment Corporation (hereinafter "Contractor") whereby Contractor agreed to construct a duplex on Owner's property located at Sunset Beach. Prior to executing the contract, Owner entered into an agreement with Bank for a construction loan in the amount of $57,786 for which Owner agreed to pay Bank a loan fee of $1,383.99 and 7½ percent per annum on the outstanding loan balance. Bank agreed to disburse the loan funds to Contractor for work completed on the project as evidenced by inspection reports supplied by Bank employees. As a condition to granting the loan, Bank required Contractor to post performance and labor and material payment bonds. Thereafter, Contractor, as principal, and Surety executed and delivered to Owner, as creditor, a performance bond in the amount of the construction loan and a labor and materials payment bond in the amount of $28,893.

In November 1972, after a substantial start had been made on the project, Contractor defaulted. Owner filed a complaint against Surety and Contractor seeking damages for fraud and praying for a declaration that the performance and payment bonds were valid and binding as against Contractor and Surety. Surety answered and cross-complained against Owner and Contractor alleging causes of action for indemnity, reimbursement, and a declaration of Surety's rights. Surety then amended its cross-complaint to allege a cause of action against Bank seeking a declaration of Surety's right to be indemnified by Bank against any liability Surety might incur as a result of claims by Owner, laborers, materialmen and subcontractors made under the performance and payment bonds.

The trial court sustained Bank's general demurrer to Surety's amended cross-complaint insofar as it attempted to state a cause of action for implied indemnity against Bank and granted Surety leave to amend. Surety then filed a second amended cross-complaint against Bank seeking a declaration of Surety's rights to be indemnified by Bank and to be subrogated to Owner's claims against Bank and to recover damages for Bank's alleged negligent disbursement of loan proceeds. In essence, Surety's second amended cross-complaint alleges that Bank disbursed an excessive amount of the loan proceeds to Contractor. These excessive disbursements were allegedly caused either by Bank's failure properly to inspect the construction project to ascertain the amount of work completed or by Bank's failure to disburse funds in accordance with correct inspection reports. The second amended cross-complaint also alleges that because of Bank's negligent disbursement of funds, when Contractor defaulted, there were insufficient funds held by Bank to

complete the project and pay laborers and materialmen and that as a direct and proximate result of Bank's negligence, Surety incurred liability for claims of Owner, laborers, materialmen and subcontractors.

*Contentions—Discussion—Disposition*

Surety contends that the trial court abused its discretion in sustaining Bank's demurrer to Surety's second amended cross-complaint without leave to amend inasmuch as Surety's cross-complaint states or could be amended to state causes of action based on implied indemnity, equitable subrogation and negligence.

■ On appeal from an order sustaining a demurrer without leave to amend, an appellate court must treat every material, issuable fact properly pleaded as true. (*Roberts* v. *Wachter,* 104 Cal.App.2d 281, 287-288 [231 P.2d 540]; *Shaeffer* v. *State of California,* 3 Cal.App.3d 348, 354 [83 Cal.Rptr. 347].) "All that is necessary as against a general demurrer is to plead facts entitling the [cross-complainant] to some relief." (*Roberts* v. *Wachter, supra,* 104 Cal.App.2d at p. 288; accord: *Kauffman* v. *Bobo & Wood,* 99 Cal.App.2d 322, 323 [221 P.2d 750], and cases there cited.)

*Implied Indemnity*

■ The doctrine of implied indemnity is a recent development (first established in California in *S. F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co.* (1958) 162 Cal.App.2d 434 [328 P.2d 785]) utilized to more equitably distribute the burden of a judgment as between tortfeasors. (See *Atchison, T. & S. F. Ry. Co.* v. *Lan Franco,* 267 Cal.App.2d 881, 884-889 [73 Cal.Rptr. 660]; see also *City & County of S. F.* v. *Ho Sing,* 51 Cal.2d 127, 130-131 [330 P.2d 802]; Molinari, *Tort Indemnity in California,* 8 Santa Clara Law. 159.) Surety and Bank are not co-tortfeasors, and the doctrine of implied indemnity has no application to the case at bench.

*Subrogation*

■ Surety contends that, upon making good Owner's loss resulting from Contractor's default, Surety became subrogated to Owner's rights against all malefactors, including Bank. (See, e.g., *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.,* 13 Cal.3d 622, 633-634 [119 Cal.Rptr. 449, 532 P.2d 97]; *Hartford Acc. & Indem. Co.* v. *Bank of America,* 220 Cal.App.2d 545, 551-554 [34 Cal.Rptr. 23]; *Meyer Koulish Co.* v. *Cannon,* 213 Cal.App.2d 419, 425 [28 Cal.Rptr. 757].)

Bank contends that Surety's right to subrogation is negated by Civil Code sections 2847 and 2848. Section 2847 provides: "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses; *but the surety has no claim for reimbursement against other persons, though they may have been benefited by his act,* except as prescribed by the next section." (Italics added.) The next section referred to is section 2848, which provides: "A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended, and also to require all his co-sureties to contribute thereto, without regard to the order of time in which they became such." Thus, Bank contends that Surety is subrogated to the rights of Owner against Contractor, but not against third persons, including Bank.[1]

Bank's contention is not persuasive. Civil Code section 2848 does not comprehensibly and exclusively measure a surety's rights to subrogation; "[t]hat section is merely declaratory of the common law on the subject, and controlling only so far as it goes." (*Estate of Elizalde,* 182 Cal. 427, 432 [188 P. 560].) Moreover, the California cases have approved application of the doctrine of subrogation to the creditor's rights against third persons when the surety's equities are superior to those of the third party wrongdoer. (*Hartford Acc. & Indem. Co.* v. *Bank of America, supra,* 220 Cal.App.2d at pp. 550-558; see also *Meyers* v. *Bank of America, etc. Assn.,* 11 Cal.2d 92, 102-103 [77 P.2d 1084]; Rest., Security, § 141, cl. (c).) The second amended cross-complaint alleges that it was Bank's negligence that caused the loss, and, accordingly, Surety should be subrogated to the rights of Owner against Bank.

■ Next Bank contends that it exercised control over the distribution of the loan proceeds not for the benefit of Owner, but for its own benefit and that, therefore, it owed no duty to Owner with respect to disbursement of the loan proceeds. We have little doubt that Bank's prime motivation was the protection of its own interest, but having agreed to and undertaken to disburse the loan proceeds in accordance with the

---

[1]Bank also contends that the quoted statutes preclude Surety from recovering against Bank under the theory of implied indemnity. It is our conclusion, however, that the quoted statutes deal not with implied indemnity but, rather, with subrogation. Civil Code section 2847 was enacted in 1872. The right to implied indemnity was not recognized in California until the decision in *S. F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co., supra,* 162 Cal.App.2d 434, filed July 31, 1958. Obviously a statute enacted in 1872 was not meant to preclude application of a legal doctrine not recognized until 1958.

value of the construction as it progressed, Bank owed to Owner the duty to exercise reasonable care in so doing. (Cf. *Gill* v. *Mission Sav. & Loan Assn.,* 236 Cal.App.2d 753, 756-757 [46 Cal.Rptr. 456].)

*Independent Action for Negligence*

Bank contends that, even if it owed a duty of reasonable care to Owner in the disbursement of the loan proceeds, it owed Surety no such duty and, therefore, Surety has no independent cause of action against Bank for negligence.

Analysis of liability for negligence in terms of "duty" has been criticized as a question-begging process. "The assertion that liability must . . . be denied because defendant bears no 'duty' to plaintiff 'begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. . . . It [duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself. . . . But it should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' [Citation omitted.]" (*Dillon* v. *Legg,* 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; *Derrick* v. *Ontario Community Hospital,* 47 Cal.App.3d 145, 152-153 [120 Cal.Rptr. 566].)

"The principal policy considerations are: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (*Rowland* v. *Christian,* 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; see also *Biakanja* v. *Irving,* 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]; *McGarvey* v. *Pacific Gas & Elec. Co.,* 18 Cal.App.3d 555, 561 [95 Cal.Rptr. 894]; *Bland* v. *Reed,* 261 Cal.App.2d 445, 451 [67 Cal.Rptr. 859].)" (*Derrick* v. *Ontario Community Hospital, supra,* 47 Cal.App.3d at p. 153.)

We may assume that Bank did not intend to affect Surety, but Bank was aware of and, in fact, requested, the completion and payment bonds, and it was foreseeable to a reasonable man in Bank's position that

Bank's negligence in disbursing the loan proceeds could cause Surety losses under these bonds. It is certain that Surety suffered injury or at least, Surety will not be able to recover unless it is able to prove it suffered injury. We cannot see that any particular moral blame attaches to Bank's conduct, but our imposition of a duty upon Bank to exercise reasonable care in the disbursement of loan proceeds in cases in which it has undertaken to disburse loan proceeds in accordance with the value of construction work performed would probably tend to cause Bank to exercise due care in future cases. By imposing a duty upon Bank to exercise reasonable care under the circumstances of this case, we would probably be imposing upon Bank the burden of employing persons competent to evaluate the progress of construction in process. We cannot see any untoward consequences to the community of imposing such a duty.

The only policy consideration with which we have any substantial difficulty is that of the availability, cost and prevalence of insurance. In all probability Bank could insure against its negligent conduct in disbursing the proceeds of construction loans, but the spreading of the risk of failures such as are alleged in the case at bench is the very business of Surety. Through the premiums charged by Surety for the performance and payment bonds, Surety is in at least as good a position as Bank to spread the risk of improper disbursement equitably throughout the construction industry.

On the whole, however, we conclude that the balance of these policy considerations falls in favor of imposing a duty upon Bank to exercise reasonable care. Civil Code section 1714 provides: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself." "[I]t is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy." (*Rowland* v. *Christian, supra,* 69 Cal.2d at p. 112.) Public policy does not clearly support an exception to the statutory rule in the case at bench.

We conclude that the trial court acted with propriety in dismissing the sixth count of the second amended cross-complaint for implied indemni-

ty, but that it erred in dismissing the eighth and ninth counts for equitable subrogation and negligence respectively.

Insofar as it dismisses the sixth count for implied indemnity the judgment is affirmed. Insofar as it dismisses the eighth and ninth counts for equitable subrogation and negligence, respectively, the judgment is reversed. Surety shall recover costs on appeal.

Tamura, Acting P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied May 10, 1976, and respondent's petition for a hearing by the Supreme Court was denied July 1, 1976.