563 F.2d 1319
 COMMUNITY NATIONAL BANK, etc., Plaintiff,
v.
FIDELITY AND DEPOSIT CO. OF MARYLAND, etc., Defendant and
Third-Party Plaintiff-Appellant,
v.
George C. PARKER et al., Third-Party Defendants,
and
Wayne Reeder and RWMCO Corp., Third-Party Defendants-Appellees.
 No. 76-1612.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 1, 1977.
Rehearing Denied Nov. 28, 1977.
 
 Cynthia H. Plevin, San Francisco, Cal., argued for appellant.
 Dominick Bianco, Bakersfield, Cal., argued for appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before BROWNING and TRASK, Circuit Judges, and FREY*, District Judge.
 PER CURIAM:
 
 
 1
 The district court granted summary judgment against a surety in favor of a third party on the ground that the surety had no greater right against the third party than the creditor had and the creditor was barred by a judgment in favor of the third party in a prior action by the creditor. A California decision subsequent to the lower court's ruling held that a surety has an independent and direct cause of action against a third party for injuries suffered by the surety as a result of the wrongful conduct of the third party. This decision requires reversal of the judgment below.
 
 
 2
 On May 1, 1969, Fidelity-Deposit Company of Maryland (Fidelity) issued a banker's blanket bond to Community National Bank (CNB) by which Fidelity agreed to indemnify CNB for any losses sustained as a result of the fraudulent or dishonest acts of CNB's employees, acting alone or in collusion with others. Shortly thereafter, George Parker, CNB's Chairman of the Board, RWMCO, a corporation, and Wayne Reeder, RWMCO's President, entered into a fraudulent scheme whereby CNB funds were misappropriated for the benefit of Cal State Airlines, a corporation controlled by Parker and Reeder.
 
 
 3
 CNB's loans to Cal State exceeded the legal lending limit permitted by national banking laws. To circumvent this limitation, Parker requested Reeder to execute a promissory note to CNB for $150,000 as an accommodation to CNB. Parker told Reeder the purpose of the transaction was to circumvent government banking restrictions and that the money would be turned over to Cal State. Reeder agreed to sign the note in his capacity as President of RWMCO, Inc., a corporation solely owned by Reeder, which had no assets. CNB credited the amount of the note to Cal State's account. The note was never paid.
 
 
 4
 CNB sued RWMCO and Reeder on the note in a California court. The state court entered judgment for RWMCO and Reeder on the ground that the note was made solely for the accommodation of CNB, neither RWMCO or Reeder received any benefit from it, and it was executed on the express understanding that neither RWMCO or Reeder would be liable. On appeal, CNB argued that CNB's stockholders were entitled to recover from RWMCO and Reeder as a matter of law for fraud. The appellate court rejected the argument on the ground that CNB had elected to sue on the note, and not for fraud, and by doing so had ratified the acts of the agents, including all the conditions under which the note was made.
 
 
 5
 CNB then sued Fidelity on its fidelity bond in state court. The suit was removed to the district court on the basis of diversity of citizenship. Fidelity filed a third-party complaint against Parker, RWMCO, and Reeder. CNB and Fidelity entered into a settlement agreement and the action was dismissed as between them. Fidelity moved for summary judgment against Parker, RWMCO and Reeder; Reeder and RWMCO filed a cross-motion against Fidelity. The district court granted Fidelity's motion as to Parker, and Parker did not appeal. The court denied Fidelity's motion as to Reeder and RWMCO, however, and granted their cross-motion for summary judgment against Fidelity, on the ground that Fidelity's rights against Reeder and RWMCO were based solely on subrogation and that these derivative rights had been extinguished in the prior state court action.
 
 
 6
 The subsequent decision in Commercial Standard Insurance Co. v. Bank of America, 57 Cal.App.3d 241, 129 Cal.Rptr. 91 (1976) undercuts the district court's holding.[1] Arnold and Mary Mendoza entered into an agreement with International Development Corp. to build a duplex on the Mendozas' land. The Mendozas borrowed $57,786 from Bank of America to finance the construction. They contracted with Commercial Standard Insurance Co. to bond the project, Commercial to act as surety, the Mendozas as creditor, and International as principal. The Bank negligently disbursed excessive funds to International, which thereafter defaulted. Because of the excessive disbursements, insufficient funds remained to complete the project and pay outstanding claims. As a result, Commercial incurred liability on its surety bond to the Mendozas, and to laborers, materialmen, and subcontractors. The surety brought an independent action for negligence against the Bank as well as an action based on subrogation to the Mendozas' rights. The trial court dismissed both claims. The independent claim was dismissed on the ground that the Bank owed the surety no duty of care. The appellate court reversed.
 
 The court wrote:
 
 7
 "Analysis of liability for negligence in terms of 'duty' has been criticized as a question-begging process. The assertion that liability must . . . be denied because defendant bears no 'duty' to plaintiff begs the essential question whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." 57 Cal.App.3d at 249, 129 Cal.Rptr. at 95 quoting in part from Dillon v. Legg, 68 Cal.2d 728, 734, 69 Cal.Rptr. 72, 76, 441 P.2d 912, 916, and Derrick v. Ontario Community Hospital, 47 Cal.App.3d 145, 152-153, 120 Cal.Rptr. 566, 571.
 
 
 8
 The court went on:"The principal policy considerations are: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.' " 57 Cal.App.3d at 249, 129 Cal.Rptr. at 95 quoting from Rowland v. Christian, 69 Cal.2d 108, 113, 70 Cal.Rptr. 97, 100, 443 P.2d 561, 564, 32 A.L.R.3d 496.
 
 
 9
 Applying this test, the court found that the surety, Commercial Standard, had stated a cause of action for negligence against the third party, Bank of America.
 
 
 10
 Viewing the evidence in the present case in the light most favorable to appellant, the party opposing the motion for summary judgment, we conclude that the Commercial Standard test for imposing independent tort liability upon a third party in favor of a surety has been satisfied. The foreseeability of harm to the plaintiff, the certainty of injury, and the close connection between the conduct and the injury are at least as clear in this case as in Commercial Standard. Fidelity, like the surety in Commercial Standard, incurred liability as a direct result of the third party's misconduct. Greater moral blame attaches to the conduct of RWMCO and Reeder and the policy of preventing further harm is more clearly served, because their conduct involved intentional fraud while the third party conduct in Commercial Standard was negligent only. For the same reason, it cannot be said that any improper burden is imposed on RWMCO or Reeder, or on the community, by requiring them to refrain from the conduct involved.[2]
 
 
 11
 Appellee argues that California Civil Code §§ 2847 and 2848 preclude liability. Section 2847 provides:
 
 
 12
 "if a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses; but the surety has no claim for reimbursement against other persons, though they may have been benefited by his act, except as prescribed by the next section."
 
 
 13
 The next section, Section 2848, provides that the surety is subrogated to the rights of the creditor.
 
 
 14
 Those provisions do not preempt the common law. In, In re Elizalde's Estate, 182 Cal. 427, 188 P. 560 (1920), a surety sought subrogation to the principal's right against a third party. The defendant argued that Section 2848 made exclusive by Section 2847 permitted only subrogation to the rights of the creditor. The court rejected this interpretation, holding Section 2848 "merely declaratory of the common law on the subject, and controlling only so far as it goes. It does not appear to us that by it the legislature intended to announce all the law on the subject." Id. at 432; 188 P. at 562.
 
 
 15
 Commercial Standard rejected the argument that Section 2847 precluded liability under the theory of implied indemnity:
 
 
 16
 "It is our conclusion, however, that the quoted statutes deal not with implied indemnity but, rather, with subrogation. Civil Code Section 2847 was enacted in 1872. The right to implied indemnity was not recognized in California until . . . 1958. Obviously a statute enacted in 1872 was not meant to preclude application of a legal doctrine not recognized until 1958." Commercial Standard Insurance Co. v. Bank of America, supra, 57 Cal.App.3d at 247 n. 1, 129 Cal.Rptr. at 94 n. 1.
 
 
 17
 Similarly, we believe the California courts would hold Section 2847 does not bar common law expansion of third party liability to protect sureties from intentional torts. Indeed, in finding a cause of action for negligence in Commercial Standard the court thought it unnecessary to discuss Section 2847.
 
 
 18
 The doctrine of collateral estoppel does not make the prior state court judgment in favor of Reeder and RWMCO binding upon Fidelity, because the issue of Reeder and RWMCO's fraud was not actually litigated.[3] Res judicata is inapplicable because Fidelity's claim against appellees is separate from and independent of CNB's claim against Reeder and RWMCO. See Commercial Standard Insurance Co. v. Bank of America, supra, 129 Cal.Rptr. at 94. By suing on the promissory note, CNB waived its own action in tort against appellees, but it did not waive Fidelity's independent action.[4]
 
 
 19
 Although in the court below Fidelity described its rights against appellees as resting on a theory of indemnity, while the court in Commercial Standard described the rights of the surety as constituting an independent cause of action in tort, the difference is one of form rather than substance. The effect of giving the surety an independent action in tort because of liability for loss to its creditor resulting from the third party's wrong is to give the surety a right of indemnity against the third party wrongdoer. The theory of indemnity advanced by Fidelity and the theory of tort liability adopted by the court in Commercial Standard depend on the same facts and rest on the principle, advanced below, that the culpable party should "bear the burden of his own misdeed," and that a surety, independent of any right of subrogation, may recover from a tortfeasor who inflicts injury on the surety's creditor causing the surety to incur liability. Appellee therefore had a fair opportunity to address the substance of the issue both in the lower court and on appeal.[5]
 
 
 20
 The judgment is vacated and the case remanded for proceedings consistent with this opinion.
 
 
 
 *
 Honorable William C. Frey, United States District Judge, District of Arizona, sitting by designation
 
 
 [1]
 Since this is a diversity case from California, we are bound to follow the substantive law of that state. See 28 U.S.C. § 1652; Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In determining that law "(d)ecisions of the California Courts of Appeal are to be followed by a federal court where the Supreme Court of California has not spoken on the question 'in the absence of convincing evidence that the highest court of the state would decide differently.' " Klingebiel v. Lockheed Aircraft Corp., 494 F.2d 345, 346 n. 2 (9th Cir. 1974), quoting in part from Stoner v. New York Life Ins. Co., 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284 (1940); West v. American Tel. & Tel. Co., 311 U.S. 223, 236-37, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Six Companies of California v. Joint Highway District, 311 U.S. 180, 188, 61 S.Ct. 186, 85 L.Ed. 114 (1940); Fidelity Union Trust v. Field, 311 U.S. 169, 177-78, 61 S.Ct. 176, 85 L.Ed. 109 (1940)
 Commercial Standard is not an aberrant ruling; it is in line with state policies expanding the scope of tort liability, see Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968) and favoring the imposition of ultimate liability on the wrongdoers rather than on innocent third parties. See Card Construction Co. v. Ledbetter, 16 Cal.App.3d 472, 478-79, 94 Cal.Rptr. 570, 573-74 (1971); Herrero v. Atkinson, 227 Cal.App.2d 69, 74, 38 Cal.Rptr. 490, 493 (1964); Alisal Sanitary District v. Kennedy, 180 Cal.App.2d 69, 75-79, 4 Cal.Rptr. 379, 382-86 (1960).
 Deference is due Commercial Standard even though it was decided after the judgment below. See Vandenbark v. Owens Illinois Glass Co., 311 U.S. 538, 541, 61 S.Ct. 347, 85 L.Ed. 327 (1941); Huddleston v. Dwyer, 322 U.S. 232, 236, 64 S.Ct. 1015, 88 L.Ed. 1246 (1944); Nolan v. Transocean Air Line, 365 U.S. 293, 295-96, 81 S.Ct. 555, 5 L.Ed.2d 571 (1961).
 
 
 [2]
 Commercial Standard involved imposition of liability for negligence and the court considered the ability of the tortfeasor to obtain insurance against liability arising out of violation of the duty imposed as a factor favoring imposition of liability. This case involves intentional fraud and it is against California public policy, as expressed in California Insurance Code § 533, for a person to insure himself against liability for his willful acts. The uninsurability of willful torts is designed to prevent willful tortfeasors from profiting from their own wrong, see Dart Industries Inc. v. Liberty Mutual Insurance Co., 484 F.2d 1295, 1298 (9th Cir. 1973) (interpreting California Insurance Code § 533), and it would be inconsistent, therefore, to consider the unavailability of insurance as a factor counseling against the imposition of liability on the intentional tortfeasor in the first place
 
 
 [3]
 See In re Williams' Estate, 36 Cal.2d 289, 292, 223 P.2d 248, 251 (1950); California Code of Civil Procedure Section 1911; A.L.I., Restatement of the Law of Judgments § 68 (1942)
 
 
 [4]
 None of the cases cited by the appellees holds that ratification and waiver extinguish the independent rights of innocent third parties. See, e. g., First National Bank v. Reed, 198 Cal. 252, 260-61, 244 P. 368 (1926), cited by appellee. (No liability where ratifier is plaintiff and no rights of innocent third parties intervene.) In their brief, appellees argued only that ratification extinguished Fidelity's rights as subrogee of CNB
 
 
 [5]
 Fidelity has also challenged the trial court's ruling that its rights as subrogee of CNB are barred by the prior suit between CNB and appellees, citing dictum in Hartford Acc. & Ind. Co. v. Bank of America, 220 Cal.App.2d 545, 557-58, 34 Cal.Rptr. 23, 30 (1963) for the proposition that a fidelity insurer subrogee is not bound by its subrogor's election of remedies. On this issue we agree with the trial court. Fidelity has overstated the dictum of Hartford: the Hartford dictum rejected the rule that the subrogor's decision to sue the fidelity insurer on the fidelity bond rather than sue the third party bars the subrogee from suing the third party. This preserves the right of subrogation in the fidelity insurance context; it does not expand the right. The Hartford doctrine has no application where, as here, the subrogor has sued the third party and is now barred from suing the third party on another inconsistent theory. Cf. Rakestraw v. Rodrigues, 8 Cal.3d 67, 72-73, 104 Cal.Rptr. 57, 60, 500 P.2d 1401, 1404 (1972). By ordinary principles of subrogation, Fidelity suing as subrogee stands in the shoes of CNB and is barred because CNB is barred. See American Fidelity Fire Insurance Co. v. United States, 385 F.Supp. 1075 (N.D.Cal.1974); Iusi v. City Title Insurance Co., 213 Cal.App.2d 582, 588, 28 Cal.Rptr. 893, 897 (1963) (Alternative holding)